ANDREW J. WITHROW, appellant,

*v.*

CORNELIUS C. WARNER, respondent.

[Filed June 21st, 1898.]

Where, in a court of equity, a deed is sought to be set aside as voluntary and fraudulent as against creditors, and the evidence is not sufficient to induce the court to avoid the deed absolutely, but is sufficient to excite a well-grounded suspicion as to the adequacy of the consideration and the fairness of the transaction, the court will permit the conveyance to stand only as security for the consideration actually given.

On appeal from a decree advised by Vice-Chancellor Pitney, who delivered the following opinion :

The complainant is a judgment creditor of the defendant Risley Barlow, and by his bill seeks to have set aside a conveyance made by Barlow to the defendant Withrow of premises formerly owned by Barlow, situate in Atlantic City, New Jersey. The allegation of the bill is that the conveyance was made by Barlow to Withrow for the express purpose of defrauding the complainant and defeating the collection of his debt, and that it was made without consideration paid by Withrow to Barlow ; or, if any consideration was paid, still, that Withrow had full notice of Barlow's object in making the conveyance.

The proofs fully establish the first of these allegations, viz., that Barlow conveyed the premises to Withrow for the purpose of preventing the complainant collecting his debt.

The circumstances are these : On or before the 25th of June, 1895, the complainant held the promissory note of Barlow for about $10,000, with warrant of attorney to confess judgment, and Barlow had verbally promised the complainant to convey to him the premises in question in satisfaction of that note. On June 25th, 1895, Barlow conveyed the premises to one Alcorn for the expressed consideration of $14,000. They were, at that

time, subject to two mortgages amounting, principal and interest, to about $7,000 and were worth about $15,000. Barlow swears that Alcorn paid him $1,000 or $1,200 in cash on account of the purchase-money, and agreed to pay the balance.

On the same day, June 25th, 1895, under pressure, Barlow confessed a judgment in the Atlantic circuit court, in favor of one Turner, to secure $534.71, debt and costs.

Immediately after this conveyance, Barlow, Alcorn, complainant and his counsel had an interview with regard to satisfying complainant's demand, which produced no results, in the course of which complainant charged Barlow with having made the conveyance to Alcorn for the purpose of defeating complainant's debt, and Barlow declared that he would do or had done so. On the 29th of June complainant entered up judgment upon his note against Barlow in the court of common pleas of the city of Philadelphia. On July 29th he commenced a suit in the supreme court of New Jersey against Barlow, founded on the Philadelphia judgment. The summons was accompanied with a copy of the declaration and notice, which had the effect of hastening the judgment unless defence with merits was entered. Immediately after the commencement of this suit, on August 1st, Alcorn reconveyed the premises to Barlow, and on the same day Barlow mortgaged them to one McCormick to secure $1,733.54. He filed a plea to the suit on the judgment in time to enable the complainant to notice the cause for trial at the Camden circuit, on the 10th of September, 1895. On the 9th of September, the day before the Camden circuit opened, Barlow, together with his wife, conveyed the premises by deed of that date to the defendant Withrow for the expressed consideration of $11,397.35. This consideration, Withrow swears, was made up of the sum of the several mortgages, judgment and taxes in arrears, with $2,500 added thereto. The deed was recorded on the 10th of September, 1895. The cause of Warner v. Barlow was reached on the list on the 24th of September, verdict for the plaintiff promptly rendered, and judgment entered thereon on the 9th of October. No money was paid at the time the deed from Barlow to Withrow was actually executed and

recorded.   The defendant Withrow swears that he had paid
Barlow $1,150 on the previous 3d of September.   A search for
judgments in the supreme court was obtained under date of the
6th of September.   Mr. Withrow's counsel in the matter was
Mr. Samuel E. Perry, who was also the attorney for Barlow in
the defence of the action at law brought by complainant, and
is the solicitor of both defendants in this cause.   He made the
necessary searches, prepared the deed, and attended to its execu-
tion and recording.   On the 10th of September, *the day* the
deed was actually recorded, Withrow paid Barlow $700 in two
checks of $350 each, drawn on two different banks in Atlantic
City.   On the 14th of September he paid him $500 in two
checks, one of $150 and the other of $350, drawn severally on
the same two banks ; and on the 25th, the day after the verdict
was rendered, he paid him $150 in three checks, one of $20, and
one of $100 on one bank, and one of $30 on the other bank,
making a total payment, proven by checks, of $1,350 ; and if
the $1,150 alleged to have been paid on the 3d of September
was actually paid, the payments aggregate $2,500.

The serious questions in the cause are—*first*, whether the price
fixed, $11,397.35, was so much below the ordinary market value
of the property as to indicate fraud ; *second*, whether the $1,150
alleged to have been paid on the 3d of September was actually
paid or not ; *third*, whether Withrow had notice that Barlow
was making this conveyance for the purpose of defrauding his
creditors, and *fourth*, was the conveyance an absolute one or by
way of mortgage.

The only written evidence of the $1,150 payment is a receipt
in pencil signed by Barlow, and dated on the day in question,
September 3d.   Withrow, who is a furniture dealer in Atlantic
City, swears that he paid the money to Barlow at his, Withrow's,
place of business, on the day the receipt bears date, in eleven
$100 bank notes and one $50 bank note.

The allegation of such a payment by a man who kept accounts
in three different banks in his city, and who was making almost
daily deposits in one or the other of these banks, challenges
close scrutiny.   In fact, I find it difficult to believe.   The re-

ceipt forms the only contract in writing that was made between the parties, and it reads in this wise :

"Atlantic City, New Jersey, 9, 3, '95.    Received of A. Withrow $1,150, a first payment on property 1824, 1824½ and 1826 Atlantic avenue, balance to make up $2,500 to be paid in thirty days."

On that same day, September 3d, he deposited in one of his banks $100.    On the 10th of September, the day after the deed was executed, and on which he drew the two checks for $350 each, he deposited in one of his banks $600 and in the other $500, both even money.    And as he swore that he was in the habit of depositing daily the silver and small bank notes which he received in the course of his business, these deposits of September 10th must have been of large bills, and must have been over and above the alleged payment of $1,150 on September 3d.

In explanation of his having so large a sum of money in large bank notes in his safe when he was doing business in a town where there were three banks, and keeping an account in each of them, Withrow swears that he frequently received in the course of his business these large bank notes from persons who were stopping temporarily in Atlantic City, and who paid in large notes and not by check, and that he preferred to keep them on hand rather than deposit them, because when he had occasion to pay his bills in Philadelphia or in New York he preferred to pay them in bank notes rather than checks.    This explanation is possible, but not probable, and its improbability was pointed out to him at the hearing.

Then, at a later day, he produced his books of account in court and attempted to show when and from whom he had received several of these $100 notes.    He accounted for it in this way : that certain persons paid him accounts due for less than $100, offered him a $100 note in payment, and he paid them the change.

He said that it was his habit during the summer season, when most of his sales were effected, to save all the large notes in his safe, and deposit in the bank the small notes and silver which he received, and that he kept three bank accounts in order that

he might deposit such promissory notes as he had for collection in the particular bank where each was made payable. A close examination of his books did not furnish any evidence of the payment of large bank notes, but simply instances where, by his unaided memory, he was able to swear that he did receive a large bank note in overpayment of his bill, and gave change; and in one case, Snyder's, he fixed the payment on September 6th. None of his clerks was called to corroborate him in this respect, nor to support his statement that the $1,150 was actually paid, although he says that some of them were nearby when it was paid. In fact, Withrow was called, and, I believe, subpœnaed by the complainant, and paid very little attention to, and apparently took little interest in, the defence, which seemed wholly in the hands of Mr. Barlow, who hunted up the witnesses on the part of the defence, and procured their attendance and sat by counsel during the hearing.

Withrow swears, in effect, that Barlow came to him and requested him to buy this property, and that he applied to Mr. Perry to look after the title, and that he did so; that the deed was drawn and executed under Mr. Perry's supervision, and sent by him to May's Landing to be recorded. He swears that he paid Barlow $1,150 in advance of getting the deed, and trusted him on the sole faith of the receipt above mentioned, and that when the deed was delivered Barlow trusted him without anything to show, except his word, for the balance of the consideration money; and, further, that all these payments were made in the absence of Mr. Perry. His examination as to the time when the receipt was prepared is as follows:

"*Q.* When was that receipt given?
"*A.* That receipt was given on the day the money was paid.
"*Q.* Not a fresh receipt?
"*A.* No, sir; does not look very fresh."

My examination of it at the time, and afterwards in going over the case, results in finding indications that it had been purposely rubbed over by the fingers in order to give it an old appearance.

Barlow, upon close examination, failed satisfactorily to show what disposition he made of the $1,150, if it was paid.

And then there are other circumstances which it is difficult to reconcile with the actual payment of the $1,150 as sworn to. On the 10th of September, the day of the record of the deed, Withrow made two deposits in two banks of even money—$600 in one and $500 in the other—and then drew against those two banks two checks of $350 each. Now, why was that course taken? Seven days earlier he had paid, as he alleges, $1,150 in bank notes to Mr. Barlow; and why should he make two deposits in bank on the 10th and then draw checks against them? Why not make a direct payment of $700 on that day out of the moneys that he deposited in bank? If it be true that he was handling these large bank notes, then we may fairly presume that the two deposits of $600 and $500 were made with large bank notes; but, whether in large bank notes or small, they were still presumably bank notes, and capable of tradition directly to Mr. Barlow without going through the act of depositing and drawing checks against them.

Another circumstance arrests attention. Withrow swears that at and before the signing of the contract of September 3d, Mr. Barlow stated to him the amount of the encumbrances on the premises, and that they added up, with the $2,500 agreed to be paid, to the exact sum of $11,397.35, and that that sum was the price agreed to be paid for the premises, and subsequently inserted in the deed of conveyance. He says that he relied upon Barlow's statement, but before taking the deed had it verified by Mr. Perry. That statement was inaccurate, to the extent at least of the interest, several years in arrears, on the complainant's mortgage, amounting to between four hundred and five hundred dollars. So that Withrow was under no obligation to pay to Barlow the whole sum of $2,500, but was clearly entitled, under the contract, to withhold therefrom enough to pay the interest on complainant's mortgage, or whatever sum was necessary to reduce the whole purchase-price down to the sum mentioned in the deed. And yet, apparently, without any inquiry into the amount due for arrears of interest, he proceeded, after the de-

Withrow v. Warner.

livery of the deed, to pay to Barlow the whole amount of $2,500. Now, the question arises, why did he do that?

Taking all these circumstances together, the improbability of Withrow's having that amount of money lying in his safe, of his paying that amount to Mr. Barlow without anything in writing more than the receipt to show for it, and without any inquiry into his circumstances and the encumbrances on the property other than what was stated to him by Mr. Barlow, and the subsequent dealings between the parties and their conduct and behavior before the court, the apparent indifference of Mr. Withrow and the strict attention paid to the case throughout by Mr. Barlow, leaves my mind far from satisfied that any such money was paid.

But both Withrow and Barlow were called as witnesses by the complainant, who thereby, in a measure, approved them as such. Their evidence is uncontradicted except by the circumstances before pointed out. The courts, in these cases, are not to presume fraud, and there is not the least evidence that Withrow knew of Barlow's fraudulent intentions. He produces the receipt for the money, signed by Barlow, and swears that he paid it, and I feel constrained, notwithstanding the very grave doubts I have entertained, to find, as a matter of fact, that he probably did pay the whole $2,500.

But that does not dispose of the case. I have said that Barlow's object was to defraud the complainant. He appears to have provided for several of his creditors in the mortgage to McCormick, and he swears that the object of making the sale was to get money in his pocket to live upon. The price obtained for the property was $2,000 to $3,000 less than its fair market value. The conduct of the parties in the presence of the court, the interest taken by Barlow and the indifference manifested by Withrow in the issue of the suit, the fact that an even sum of money—$2,500—was paid for the property over and above the encumbrances, indicate to my mind that the transaction was that of a mortgage and that Barlow expects to get some further benefit from the property. A man in his circumstance has no right to give away his property or to sell it at a price much below its

51

value for the sake of getting ready money and preventing his property going to pay his debts, and I think that when such a case arises the inclination of a court of equity should be to hold the transaction a mortgage instead of an absolute sale, as was done in the case of *Demarest* v. *Terhune, 3 C. E. Gr. 532.*

I shall therefore advise a decree that the complainant have leave to redeem the property by paying to the defendant Withrow the sum of $2,500, with interest, the latter to be charged with the rents and profits of the premises in the meantime and credited with the expenses of repairs and taxes. For that purpose an account must be taken. If the complainant shall decline to take such a decree the bill will be dismissed, with costs as to Withrow.

The complainant accepted the decree offered him and the defendant Withrow appealed to this court.

*Mr. David J. Pancoast,* for the appellant.

*Mr. Howard Carrow,* for the respondent.

The opinion of the court was delivered by

COLLINS, J.

The burden of complaint of the appellant is that, while disclaiming any right to presume fraud on his part, and conceding that there is no evidence that he knew of his grantors fraudulent intentions, the vice-chancellor nevertheless proceeds to deprive him of the fruits of his bargain.

The concession, if warranted, had weight only as against an absolute avoiding of the deed. To work such a result it is necessary that it should appear that the grantee had knowledge of or participated in the fraudulent intent of the grantor; but where, in such a suit as is involved in this appeal, the evidence, though not sufficient to induce the court to avoid the deed absolutely on the ground of fraud, is sufficient to excite a well-grounded suspicion as to the adequacy of the consideration and

the fairness of the transaction, the court will permit the conveyance to stand only as security for the consideration actually given.

Such was declared to be the doctrine of courts of equity by Mr. Justice Depue in the case of *Muirheid* v. *Smith, 8 Stew. Eq. 303, 312*, decided in this court. In that case the majority of the court had no doubt of the adequacy of consideration or of the *bona fides* of the deed; but the doctrine so declared in the opinion read for the minority was not in any way challenged in the opinion read for the court. On the contrary, it was impliedly, if not expressly, upheld. It had been enunciated in almost the same terms by Chancellor Kent in *Boyd* v. *Dunlap, 1 Johns. Ch. 478*, and approved by this court in *Demarest* v. *Terhune, 3 C. E. Gr. 532*. The only essential difference between the case last cited and that now before us is that in the one the consideration of the deed held to be a mortgage was an antecedent debt, while in the other it is a money payment. This difference does not affect the principle involved. The doctrine declared was, in this court, in the case of *Winans* v. *Graves, 16 Stew. Eq. 263, 276*, held applicable to a new consideration. In *Demarest* v. *Terhune, ubi supra,* it was adjudged that when the consideration of a conveyance made by a debtor in failing circumstances is shown to be inadequate, the burden of proving *bona fides* is thrown on the grantee, and that if the honesty of the conveyance is left in doubt, upon the evidence, the sale will be set aside on equitable terms.

Upon the facts proved in this case the appellant has no ground to complain of a decree securing him, as by way of mortgage, the sum he claims to have paid for the property.

It has been suggested that the frame of the bill is not adapted to such a decree. The bill is not quite accurately stated in the opinion below. It simply charges that to prevent the complainant from collecting his debt the conveyances and mortgage recited were given; that "no consideration whatever was paid or exists or did exist for any of the said conveyances or mortgage," and that the grantor remains in possession. It prays that "the said fraudulent conveyances and mortgage  *  *  *  may be set aside and declared null and void," and for other relief.

In *Winans* v. *Graves, ubi supra,* it was assumed that such a bill would not warrant the relief there, as in this case, deemed appropriate, although it was intimated that proper amendments might be made in this court; but it evidently was not noticed by the learned judge who wrote the opinion in that case that in *Demarest* v. *Terhune, ubi supra,* it had been directly decided that a like bill was sufficient for the purpose. Chief-Justice Beasley, in delivering the opinion of this court, said : " Nor is the frame of the bill inapplicable to this aspect of the case. It proceeds upon the point of a conveyance without consideration, and which was, on that account, a fraud upon creditors. The case laid, therefore, is partially proved ; the conveyance, though not wholly, is in some degree voluntary, and is thus far constructively a fraud, delaying, and if not set aside or controlled, defeating creditors. I do not, consequently, find any difficulty arising from the structure of the pleadings in granting relief in the form indicated," and it was decreed that the deed should stand as a mortgage.

The relief, therefore, intended by the learned vice-chancellor in the present case should be effectuated, but by inadvertence the decree has been made too broad. It directs a conveyance to the complainant upon payment of Mr. Withrow's claim. The utmost that complainant could ask was a sale of the premises to pay, first, the Withrow claim, and then his judgment.

Let the decree be reversed, and the cause be remitted with instructions in conformity with this opinion.

No costs will be allowed in this court.

*For reversal*—COLLINS, DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH—13.

*For affirmance*—KRUEGER—1.